IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JENNIFER LEA WYNN,
      Estate of Sean Wynn                                        PLAINTIFF

V.                               NO. 12-5050

MICHAEL J. ASTRUE,[1]
Commissioner of the Social Security Administration            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Jennifer Lea Wynn, brings this action on behalf of the Estate of Sean Wynn,
pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the
Social Security Administration (Commissioner) denying Mr. Wynn's claims for a period of
disability and disability insurance benefits (DIB) and supplemental security income (SSI) under
the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the
Court must determine whether there is substantial evidence in the administrative record to
support the Commissioner's decision.  <u>See</u> 42 U.S.C. § 405(g).[2]

**I.**      **Procedural Background:**

Mr. Wynn filed his applications for DIB and SSI on June 15, 2009 and October 5, 2009,
respectively, alleging an inability to work since January 15, 2005, due to "Hernia surgerys[sic]

---

[1]Carolyn Colvin became the Acting Social Security Commissioner on February 14, 2013.  Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Carolyn Colvin has been substituted for Commissioner  Michael
J. Astrue as the defendant in this suit.

[2]Sean Wynn passed away on May 11, 2012, and on July 2, 2012, Jennifer Lea Wynn (Successor-In-Interest) filed
a motion to substitute parties. (Doc. 11).  The Court granted the motion on July 17, 2012. (Doc. 12). On July 23,
2012, Plaintiff filed a Motion to Remand for consideration of the Coroner's report, which indicated that Mr.
Wynn passed away as the result of a drug overdose. (Doc. 13-1).

depression anixity[sic] panic attacks backpain." (Tr. 125-129, 130-133, 148). He met the insured requirement through December 31, 2010. (Tr. 201). An administrative hearing was held on July 8, 2010, at which Mr. Wynn appeared with counsel and testified. (Tr. 37-70).

By written decision dated November 17, 2010, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - obesity, depression, panic disorder, and alcohol abuse. (Tr. 12). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with the following limitations: sit, stand, and walk for six hours in an eight hour workday; no climbing of ladders, ropes or scaffolds; no work around unprotected heights or dangerous machinery; no contact with large groups of the general public; and, can perform simple, routine work.

(Tr. 16). With the help of a vocational expert (VE), the ALJ determined Plaintiff was unable to perform his past relevant work, but was capable of performing other jobs, such as bench assembler, laundry worker, and poultry eviscerator. (Tr. 20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on January 19, 2012. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 8). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 19, 20).

The Court has reviewed the entire transcript. The complete set of facts and arguments

are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that his disability, not simply his impairment, has lasted for

-3-

at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC).  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

## III.   Discussion:

Plaintiff raises the follow issues on appeal: 1) The ALJ's finding that Mr. Wynn's mental disorders were not severe was not based upon substantial evidence; 2) The ALJ erred in regards to the weight given the opinions of Mr. Wynn's treating physician, Dr. Kendrick; 3) The ALJ erred in disregarding the credibility of Mr. Wynn's subjective complaints. (Doc. 10 at p. 6).

### A.   Severe Impairment:

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.   20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §

-4-

§ 404.1521, 416.921.  The Supreme Court has adopted a "de minimis standard" with regard to the severity standard.  Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

The ALJ found that Plaintiff suffered from the severe impairments of depression and panic disorder, but that they did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 13).  In making this finding, the ALJ considered whether "paragraph B" criteria was satisfied, and found that with respect to activities of daily living, Mr. Wynn had moderate restriction; in social functioning, he had moderate difficulties; with regard to concentration, persistence or pace, he had moderate difficulties; and he had no episodes of decompensation of extended duration.  (Tr. 15).

Plaintiff has failed to indicate what specific mental impairment, or impairments the ALJ allegedly did not find severe and therefore, as argued by Defendant, he failed to carry his burden of proof that he had an additional severe impairment.

Accordingly, the Court finds there is substantial evidence to support the ALJ's findings with respect to the severity of Mr. Wynn's mental impairments.

**B.    Weight Given to Treating Physician:**

Plaintiff argues that the ALJ erred by not giving weight to Mr. Wynn's treating physician, Dr. William Kendrick.  In his opinion, the ALJ assigned no weight to the opinion of Dr. Kendrick, who stated that Mr. Wynn was totally disabled and that his conditions made him unable to be consistently employed.  (Tr. 19).  "An ALJ may justifiably discount a treating physician's opinion when that opinion 'is inconsistent with the physician's clinical treatment notes'" or when they are "'inconsistent or contrary to the medical evidence as a whole.'" Martise

-5-

v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011).

On June 5, 2010, Dr. Kendrick wrote a letter "TO WHOM IT MAY CONCERN," stating as follows:

> This patient has the above listed chronic conditions that, in my opinion, together make him unable to be consistently gainfully employed.

(Tr. 525).  On July 8, 2010, only one month later, Dr. Kendrick wrote another letter "TO WHOM IT MAY CONCERN," stating as follows:

> I serve as the physician for this patient. He has severe mental illness, not enough to make him incompetent in day to day activities, but enough to make it where he cannot sustain relationships. I strongly recommend that he be considered totally disabled as a result of this mental illness or that his court date be delayed until he can get adequate psychiatric evaluation.

(Tr. 671).

The ALJ found that statements that a claimant is "disabled", "Unable to work", can or cannot perform a past job, meets a Listing or the like are not medical opinions but are administrative findings dispositive of a case, and that such issues are reserved to the Commissioner. (Tr. 19). The ALJ found that Dr. Kendrick's opinion was not supported by the record, and was contradicted by persuasive evidence. (Tr. 19).  He found Dr. Kendrick's opinion contrasted sharply with the other evidence of record, and that Dr. Kendrick apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and "seemed to uncritically accept as true most, if not all, of what the claimant reported." (Tr. 19). "Moreover, the specific objective findings needed to support the level of restrictions noted by Dr. Kendrick are not documented." (Tr. 19).

On January 12, 2009, Mr. Wynn was admitted to Vista Health on a voluntary basis to the

-6-

adult psychiatric program for treatment of worsening depression, mood instability and alcohol abuse. (Tr. 319). Mr. Wynn had stated that "I need to get help." (Tr. 319). Dr. Stephen Dollins, conducted the Initial Psychiatric Evaluation. (Tr. 319-321). Dr. Dollins concluded that Mr. Wynn was fully oriented to person, place and time, and his judgment appeared generally intact with the exception of some dangerous behaviors when he had been drinking. (Tr. 321). Mr. Wynn denied any suicidal or homicidal thoughts, but had been endangering the safety of others recently with his behavior, and was reported to have made a threat to overdose on his medications on January 10, 2009. (Tr. 321). Dr. Dollins diagnosed Mr. Wynn as follows:

| | |
|---|---|
| Axis I: | Major depression, recurrent, severe, without psychotic features |
| | Alcohol abuse |
| Axis II: | No diagnosis |
| Axis III: | Hypertension |
| | Hypercholesterolemia[3] |
| Axis IV: | Family and financial stresses |
| Axis V: | GAF score is 20 |

(Tr. 321). Dr. Dollins reported that based on his insight and motivation for treatment, Mr. Wynn's overall prognosis was at that time good. (Tr. 321). On January 16, 2009, Mr. Wynn was discharged from Vista Health. It was reported that over the course of his hospital stay, Mr. Wynn experienced a significant improvement in his mood. (Tr. 323). By January 15, 2009, Mr. Wynn reported feeling better and more stable in his mood and at the time of his discharge, his condition was "markedly improved." (Tr. 323). He was given a GAF score of 40 upon discharge. (Tr. 323).

On September 16, 2009, a Mental Diagnostic Evaluation was performed by Jeanne H. Curtis, Psy.D. (Tr. 488-492). At that time, Mr. Wynn was taking Clonazepam, Seroquel, and

---

[3]Hypercholesterolemia - The presence of an abnormally large quantity of cholesterol in the bile. Stedman's Medical Dictionary 919 (28th ed. 2006)

AO72A
(Rev. 8/82)

Ambien. (Tr. 489). Mr. Wynn reported to her that he would be living alone when he went home from the evaluation because his wife was moving out while he was there.  (Tr. 489). She found that Mr. Wynn needed no assistance with activities of daily living except for reminders at times. (Tr. 489). She noted that he was tearful and tense during the interview. (Tr. 490).  Dr. Curtis diagnosed Mr. Wynn as follows:

|          |                                                                  |
|----------|------------------------------------------------------------------|
| Axis I:  | Major Depressive Disorder, Recurrent, Severe without Psychotic Features |
|          | Panic Disorder without Agoraphobia                               |
|          | Alcohol Abuse                                                    |
| Axis II: | 799.9                                                            |
| Axis V:  | GAF - 50-60                                                      |

(Tr. 491). Dr. Curtis found that Plaintiff was generally capable of performing most activities of daily living autonomously; demonstrated difficulty with the capacity to communicate and interact in a socially adequate manner, due to lability; had capacity to communicate in an intelligible and effective manner; had no difficulty with capacity to cope with the typical mental/cognitive demands of the evaluation; had minimal difficulty with concentration on the tasks; was persistent in the evaluation and stated he was typically too impatient and "antsy" to complete tasks; and responded at an adequate pace during the evaluation, within an acceptable timeframe. (Tr. 492).

On September 24, 2009, a Mental RFC Assessment was completed by non-examining consultant Dr. Dan Donahue (Tr. 511-513).  Dr. Donahue found that Plaintiff was moderately limited in seven categories and not significantly limited in twelve categories. (Tr. 513). He further found that Mr. Wynn was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; where complexity of tasks was learned and performed by rote, with few variables, little judgment; and where supervision required was

-8-

simple, direct and concrete (unskilled). (Tr. 513). On that same date, Dr. Donahue completed a Psychiatric Review Technique form, wherein he found that Plaintiff had a mild degree of limitation in restriction of activities of daily living; moderate degree of limitation in difficulties in maintaining social functioning and maintaining concentration, persistence, or pace; and had no episodes of decompensation. (Tr. 507).

The ALJ gave substantial weight to Dr. Curtis' opinion, and great weight to Dr. Donahue's, who both specialize in the area of mental health. (Tr. 18-19).  More weight is to be extended to "the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 416.927(d)(5).

Accordingly, based upon the above, as well as for the reasons given in Defendant's well-reasoned brief, the Court is of the opinion that there is substantial evidence to support the weight the ALJ gave the opinions of the medical providers in this case.

### C.    Credibility Findings:

The ALJ was required to consider all the evidence relating to Mr. Wynn's subjective complaints including evidence presented by third parties that relates to: (1) Mr. Wynn's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir.

AO72A
(Rev. 8/82)

2003).

The ALJ found that although Mr. Wynn's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment. (Tr. 17). The ALJ discussed the medical evidence, as well as Mr. Wynn's daily activities. (Tr. 15). He noted that Mr. Wynn cared for his children when they were not in school, took care of his personal needs, cooked, did the dishes, cleaned, did the laundry, drove, shopped for food, and watched television. (Tr. 15). He also noted that Mr. Wynn indicated that he did socialize and spent time with others. (Tr. 15). Mr. Wynn testified that he was taking Tylenol PM and Ambien to help him sleep, but that neither worked. (Tr. 56). He further testified that the Klonopin helped with the panic attacks and anxiety, but that the Seroquel was not helping with the depression and anger issues. (Tr. 58). He stated that the hydrocodone was not something that he took regularly, but only when he was in pain. (Tr. 60).

The ALJ correctly noted that there was evidence that Mr. Wynn had not been entirely compliant in taking prescribed medications, which suggested that the symptoms may not have been as limiting as Mr. Wynn alleged. (Tr. 19-20, 418, 426, 432 ). "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." Brown v.Barnhart, 390 F.3d 535, 540 (8th Cir. 2004)(citations omitted); 20 C.F.R. § 416.930(b).

Based upon the foregoing, and for the reasons given in Defendant's well-reasoned brief, the Court finds there is substantial evidence to support the ALJ's credibility findings.

**D.     Motion to Remand:**

-10-

As noted earlier, Plaintiff filed a Motion to Remand for Consideration of Additional Medical Evidence. (Doc. 13). Plaintiff attached a copy of the Coroner's July 6, 2012 report ruling the cause of Mr. Wynn's death to be a medication overdose.  Plaintiff argues the record shows Mr. Wynn to be seriously mentally ill and reflects "numerous occasions where the Claimant threatened to commit suicide by overdosing on his medication." (Doc. 13).

"The district court may remand a case to have additional evidence taken 'but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" Hepp v. Astrue, 511 F.3d 798, 808 (8th Cir. 2008)(quoting 42 U.S.C. § 405(g)). "'To be considered material, the new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied.'" Hepp, 798 F.3d at 808 (quoting Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997)(internal quotation omitted).

In the present case, Defendant concedes there is good cause for not including the Coroner's report in the record, as Mr. Wynn died subsequent to the Appeals Council's denial of Plaintiff's request for review. (Doc. 20). However, Defendant argues that the new evidence is not "material."

As noted by Defendant, the Coroner's report does not state that the overdose was deliberate, or that there was evidence that the overdose was caused by Mr. Wynn's attempt to commit suicide.  The Court recognizes that Mr. Wynn indicated he might try to overdose when he was being evaluated by Dr. Curtis.  (Tr. 488). However, Mr. Wynn's death occurred one-and-one-half years after the ALJ's decision.  The new evidence must not only pertain to the time period for which benefits were denied, but must not concern a subsequent deterioration of a

-11-

previously non-disabling condition.  <u>Jones</u>, 122 F.3d at 1154.  Additional evidence showing a deterioration in Plaintiff's condition significantly after the Commissioner's final decision is not a material basis for remand.  <u>Id.</u>

Accordingly, the new evidence is not a basis for remand.

**IV.   Conclusion:**

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's decision and accordingly, hereby affirms the ALJ's decision and dismisses Plaintiff's case with prejudice.

DATED this 16th day of May, 2013.

/s/ *Erin L. Setser*
_____
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)